AO 106 (Rev 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 JUN 25 PM 2:09

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Location Data Re Cellular Telephone 216-801-8126
T-Mobile/Sprint, USA
Law Enforcement Relations Group 4 Sylvan Way
Parsipanny, NJ 07054

Case No.

2:21-mj-440

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the District of New Jersey, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC § 841(a)(1) | Distribution/Manufacturing/Possession with intent to Distribute a Controlled Substance |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Aaron Green
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 25, 2021  12:15 PM

City and state: Columbus, OH

Kimberly A. Jolson
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING CELLULAR TELEPHONE ASSIGNED CALL NUMBER (216) 801-8126 | UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Aaron Green, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, deposes and states:

## INTRODUCTION

1. I submit this Affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), authorizing agents of the ATF to ascertain the physical location of the cellular telephone, assigned call number **(216) 801-8126**, utilized by David VARNER JR. (hereafter referred to as the TARGET CELLPHONE), with services provided by T-Mobile/Sprint, including but not limited to E-911 Phase II data (or other precise location information) concerning the TARGET CELLPHONE (the "Requested Information"), for a period of thirty (30) days. The Affiant is also seeking historical subscriber, toll and tower information for the TARGET PHONE covering the entire investigative period. The TARGET CELLPHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The

1

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I have been a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since November of 2017. I am a graduate of the ATF National Academy Special Agent Basic Training Program and the Federal Law Enforcement Training Center, Criminal Investigator Training Program. Prior to joining the ATF, I was a member of the Federal Air Marshal Service, with the Department of Homeland Security, from December 2010 to July 2016 and I am a graduate of the Federal Law Enforcement Training Center, Federal Air Marshal Training Program. Prior to joining the Air Marshal Service, I worked as a patrol officer for the Columbus Police Department in Columbus, Ohio from December 2000 to December 2010. During my career, I have investigated violations of Federal and State laws to include firearms and illegal narcotics. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision locates, cell-site activation information as well as reviewing call detail information.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the ATF and other law enforcement agencies; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another special agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Since this Affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the

investigation. Your Affiant respectfully submits that probable cause exists to believe the Requested Information will constitute or lead to evidence of offenses involving the following: Title 18, United States Code, Section 371, that is two or more persons conspiring to commit any offense against the United States; Section 922(a)(6), that is knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition; and Title 21, Section 841, that is to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance (collectively referred to as the "TARGET OFFENSES"); as well as the identification of individuals who are engaged in the commission of these offenses. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, will lead to the identification of individuals who are engaged in the commission of these offenses and assist law enforcement in locating David VARNER JR. (*hereinafter VARNER JR.*) for the purposes of furthering the investigation.

5. This court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.

6. For the reasons set out in this Affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by VARNER JR., and others unknown (collectively, the TARGET SUBJECTS). Further, there is probable cause to believe VARNER JR. is using the TARGET CELLPHONE to commit the TARGET OFFENSES.

## FACTS ESTABLISHING PROABLE CAUSE

1. On or about March 2, 2021, your affiant interviewed a Confidential Source (CS) regarding Marekus BENSON (*hereinafter BENSON*) for the purposes of furthering the

3

investigation., who is the target of an ongoing ATF investigation. The CS advised that BENSON, and others travelled from Columbus, Ohio to the area of Garfield, California on or about the week of Memorial Day, May 25, 2020. The CS advised that BENSON purchased approximately four (4) pounds of marijuana from an unknown residence. The CS advised that BENSON booked a hotel room in the area prior to returning to Columbus, Ohio via automobile. The CS advised that on the way back to Columbus, Ohio, BENSON also stopped at a dispensary to purchase approximately a half-pound of marijuana. The CS advised your affiant that BENSON comes to Columbus, Ohio approximately every three (3) to four (4) months to purchase "Ice" from VARNER JR., also known as "Day Day". Your affiant knows that "Ice" is a common code word for methamphetamine. The CS described VARNER JR. and BENSON as having a close relationship and explained that VARNER shows BENSON everything. According to the CS, VARNER JR. obtains his methamphetamine from California and VARNER JR. was in California at the same time as BENSON the week of Memorial Day 2020. Additionally, the CS stated BENSON distributes his methamphetamine in Johnstown, Pennsylvania, where he resides, because he can make three times the profit in Johnstown as he would in Columbus.

7.      On or about May 28, 2020, an Illinois State Police (ISP) Trooper conducted a traffic stop on a 2020 GMC Yukon XL, Utah license F27IZG (rental vehicle), on Interstate 72, at approximately milepost 38. The trooper identified the occupants of the vehicle as Carlos Todd and BENSON. The ISP Trooper smelled the odor of cannabis (marijuana) coming from the vehicle and asked Mr. Todd if there was any cannabis in the vehicle. Mr. Todd stated that they had smoked "weed" in the vehicle but that there was not any cannabis in the vehicle. The ISP trooper also asked BENSON if there was any cannabis located in the vehicle and BENSON stated that there

was not. ISP Troopers then conducted a probable cause search of the vehicle and located a black Louis Vuitton bag in the back seat near where BENSON was seated. Inside the bag was a large amount of United States currency totaling $16,920.00. Next to the Louis Vuitton bag ISP troopers discovered a white draw string bag containing multiple jars of raw cannabis (marijuana). While searching the rest of the vehicle, ISP troopers located four (4) clear vacuum-sealed packages of marijuana in a natural void area of the rear driver's side wheel well. The total quantity of marijuana recovered from the vehicle was 2,913.7 grams.

8. On or about March 15, 2021 Columbus Police Officer Jerry Orrick obtained a Pen Register from the Court of Common Pleas in Franklin County for BENSON'S cellular phone. Historical records from the Pen Register show that between May 06, 2019 and April 09, 2021 BENSON and VARNER JR. made approximately 27,556 calls to one another.

9. On or about April 30, 2021 the Commonwealth of Pennsylvania Office of Attorney General arrested BENSON for Homicide, Aggravated Assault, Kidnapping and Criminal Conspiracy. On the same date the Johnstown PA, Police Department and PA Upper Yoder Township Police Department executed a search warrant at BENSON'S residence, located at 300 Golde Street in Johnstown, PA. The Officers recovered suspected heroin, methamphetamine, cocaine, marijuana and over $66,000.00 in United States currency in the residence. Additionally, An Extar, 5.56 firearm and various ammunition were recovered from the residence. Your affiant affirms that BENSON is federally prohibited from possessing a firearm or ammunition.

10. Your affiant believes that the facts in paragraphs 7, 8, and 9 corroborate the information received from the CS in paragraph 6.

11. On or about May 25, 2021 your affiant obtained financial records for VARNER JR from JP Morgan Chase Bank via subpoena which revealed that VARNER JR. had a credit card

5

transaction dated July 1, 2019 from the Storage One rental facility located at 10991 National Road Southwest in Etna, Ohio.

12. On or about June 15, 2021 your affiant executed a Grand Jury Subpoena at the Storage One storage facility to obtain records relating to VARNER JR. The records provided included a leasing agreement, tenant history and a user activity log used by VARNER JR. The records revealed that VARNER JR. was currently renting unit 216, as of April 26, 2021.

13. On or about June 23, 2021 your affiant observed a free air sniff conducted by Columbus Police Department (CPD) Canine "Elvis" who was accompanied by his handler, CPD Officer Kenneth Coontz at the Storage One rental facility located at 10991 National Rd. Southwest, Etna, Ohio. The free air sniff was in reference to a storage unit rented by VARNER JR. Your affiant obtained permission from the Storage One owner prior to conducting the free air sniff. CPD Officer Coontz walked Elvis passed several units prior to approaching unit 216. As Elvis walked by unit 216, he stopped and began scratching aggressively at the bottom left corner of the unit, thus indicating the possibility of narcotics inside the unit.

14. Your Affiant knows through training, experience, and conversations with other law enforcement officers that individuals engaged in a conspiracy will use their telephone to communicate with each other. In addition, cellular telephones are commonly in the physical possession of owners which would yield information as to where the conspirators may be meeting, transferring controlled substances or firearms, storing controlled substances, distributing the controlled substances, or other actions in furtherance of the conspiracy. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

### E-911 PHASE II DATA AND CELL SITE DATA

15. In my training and experience, I have learned that T-Mobile/Sprint is a company

that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector record. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., 120-degree face of the tower) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

16. Based on my training and experience, I know that T-Mobile/Sprint can collect E-911 Phase II data about the location of the TARGET CELLPHONE, by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile/Sprint's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that T-Mobile/Sprint can collect cell-site data about the TARGET CELLPHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the

cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile/Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector record is most imperative in this investigation. Due to the difficulty in conducting surveillance operations on VARNER JR., Your Affiant believes the GPS data and cell site data is vital to the investigation. The ability to locate VARNER JR. and possible associates while conducting the above-described criminal activity is crucial to obtaining evidence for prosecution and, eventually, executing a possible arrest.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

20. It is further requested, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize notice to be delayed for a period of thirty days after the termination of the monitoring period authorized by the warrant. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELLPHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not

8

authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

21. I further request that the Court direct T-Mobile/Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile/Sprint. I also request that the Court direct T-Mobile/Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile/Sprint's services, to include by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile/Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile/Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

22. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELLPHONE outside of daytime hours.

23. It is further requested that the warrant, the Courts Order, and this Affidavit be sealed until further order of the Court in order to avoid premature disclosure of the investigation and better ensure the safety of agents and others.


*[signature]*
Aaron Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this      day of June, 2021

*[signature]*
Kimberly A. Jolson
United States Magistrate Judge

10

## ATTACHMENT A

### The Property to Be Searched

1. The cellular telephone being used by the target David VARNER JR. (TARGET CELLPHONE), more particularly described as the cellular telephone assigned call number (216) 801-8126, with service provided by T-Mobile/Sprint.

2. Records and information associated with the TARGET CELLPHONE, including information about the location of the TARGET CELLPHONE, as described in Attachment B, that is within the possession, custody and control of T-Mobile/Sprint.

## ATTACHMENT B

### I. Information to be Disclosed by the Provider—Location

All information about the location of the TARGET CELLPHONE described in Attachment A for a period of thirty days, during all times of day and night. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," "Information about the location of the TARGET CELLPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile/Sprint, T-Mobile/Sprint is required to disclose the Location Information to the government. In addition, T-Mobile/Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile/Sprint services, including by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile/Sprint's wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile/Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18

U.S.C. § 3103a(b)(2).

## II. Records and Other Information to Be Disclosed—Additional Information

In addition to the above, T-Mobile/Sprint is further required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period January 1, 2019, through the current date of this document.

A. The following information about the customers or subscribers of the Account:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long-distance telephone connection records;
4. Length of service (including start date) and types of service utilized;
5. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
6. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
7. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to the Account, including:

1. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

13

2. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.

## III. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of the TARGET OFFENSES involving the TARGET SUBJECTS.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.